**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

RHONDA SWEAT,

        Plaintiff,

        v.

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

        Defendant.

CIVIL ACTION NO.: 5:17-cv-52

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff contests the decision of Administrative Law Judge Paul S. Carter ("the ALJ" or "ALJ Carter") denying her application for Supplemental Security Income. Plaintiff urges the Court to either issue her a favorable decision or reverse and remand the ALJ's decision for proper consideration. Defendant asserts the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** the Court **REVERSE AND REMAND** the decision of the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), for further consideration consistent with this opinion. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to enter the appropriate judgment of reversal and remand and to **CLOSE** this case.

### BACKGROUND

Plaintiff filed an application for Supplemental Security Income on December 5, 2013, alleging that she became disabled that same day,[1] due to her suffering from lupus and fibromyalgia, among other impairments. (Doc. 9-2, p. 22; doc. 15, p. 2.) After her claim was

---

[1] Plaintiff's initial alleged onset date was December 1, 2010, but she later amended this date to December 5, 2013, the date on which she filed her Social Security claim. (Doc. 9-2, p. 20.)

denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. (Doc. 9-2, p. 20.) On February 26, 2015, ALJ Carter conducted a hearing at which Plaintiff, who was represented by counsel, appeared and testified. Michael C. Dorsey, a vocational expert, also appeared at the hearing telephonically. ALJ Carter found that Plaintiff had been not disabled within the meaning of the Social Security Act ("the Act"), 42 U.S.C. § 301 *et seq*., from December 5, 2013, through the date of his decision. (Id.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id. at p. 2)

Plaintiff, born on June 20, 1975, was forty (40) years old when ALJ Carter issued his final decision on April 26, 2016. (Id. at pp. 32, 34.) She has a high school education with some college credits and is able to communicate in English and perform basic math. (Id. at p. 32.) Plaintiff's past relevant work experience includes employment as a cashier, fast food worker, and house cleaner. (Id.)

## DISCUSSION

### I.    The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability. 20 C.F.R. § 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987); see also 20 C.F.R. § 404.1520.

The first step determines if the claimant is engaged in "substantial gainful activity." Id. § 416.920(a)(4)(i); Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in any such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments as defined by the "severity regulation." Id. § 416.920(a)(4)(ii), (c); Yuckert, 482 U.S. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to Step Three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations ("the Regulations") and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. Id. § 416.920(a)(4)(iii), (d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Id. § 416.920(a)(4)(iii), (d); Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step. At Step Four, a determination is made as to whether the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity ("RFC") to perform past relevant work. Id. § 416.920(a)(4)(iv), (e), (f); Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013) (per curiam). A claimant's RFC "is an assessment . . . of the claimant's remaining ability to do work despite [her] impairments." Stone, 503 F. App'x at 693–94 (ellipsis in original) (quoting

Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform her past relevant work, the final step of the evaluation process determines whether she is able to adjust to other work in the national economy, considering her age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Id. § 416.920(a)(4)(v), (g); Yuckert, 482 U.S. at 142.

In the instant case, the ALJ Carter followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of December 5, 2013, through the date of the ALJ's decision on April 26, 2016. (Doc. 9-2, pp. 22, 34.) At Step Two, ALJ Carter determined that Plaintiff had a number of conditions considered "severe" under the Regulations, including lupus disease of the lung, fibromyalgia, obesity, bilateral foot arthritis, status-post right knee surgery, left shoulder disorder, left carpal tunnel syndrome, major depressive disorder, and anxiety. (Id. at p. 22 (citing 20 C.F.R. § 416.920(c).) At the next step, the ALJ determined that none of Plaintiff's impairments or combination of impairments met or medically equaled a listed impairment under the Regulations. (Id. at pp. 22–24 (citing 20 C.F.R. §§ 416.920(d), 416.925, 416.926).)

After considering the entire record, ALJ Carter found Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 416.967(a), with the following exceptions: the freedom to briefly stretch every 30 minutes without being taken off task; occasional (up to one-third of an eight-hour workday) pushing and pulling at the sedentary level; frequent fingering, grasping, and manipulating; avoiding hot or cold temperature extremes, working outside, and exposure to dust, smoke, fumes, and chemicals; avoiding climbing ladders and heights; and the inability to perform complex or semi-skilled tasks. (Id. at pp. 24–32.) In determining Plaintiff's RFC, the ALJ also found her capable of performing one-to-five step repetitive tasks and of having casual

contact with co-workers and the public. (Id. at p. 24.) Pertinently, ALJ Carter determined that Plaintiff's severe physical impairments would likely result in some symptoms and work related limitations but that none of them would lead her to miss more than three days of work per month, as Dr. Charles Galea, one of her treating physicians, opined. (Id. at pp. 25–29, 30–31.) Thus, based on an extensive review of the medical evidence submitted, the ALJ concluded Plaintiff was able to perform a limited range of sedentary work. (Id. at pp. 24–32.)

At Step Four, ALJ Carter found Plaintiff unable to perform her past relevant work as a cashier, fast food worker, or house cleaner because each job exceeded the sedentary exertional level as limited by Plaintiff's RFC. (Id. at p. 32.) However, considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded at the fifth and final step that Plaintiff could perform the occupations of document preparer, printed circuit board screener, and lens inserter, all jobs that exist in significant numbers in the national economy. (Id. at pp. 32–33.) Therefore, after applying the five-step process, ALJ Carter determined that Plaintiff was not disabled within the meaning of the Act. (Id. at pp. 33–34.)

## II.     Issue Presented

Plaintiff presents one issue for appeal: whether the ALJ erred in discounting the opinion of her treating physician, Dr. Charles Galea, that Plaintiff would miss more than three days of work per month when the ALJ afforded great evidentiary weight to the rest of Dr. Galea's opinion. Plaintiff argues ALJ Carter's decision in this respect lacked good cause, was not supported by substantial evidence, and did not comply with Social Security Ruling ("SSR") 96-2p. (Doc. 15, pp. 15–16.)

### III.    Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F. 3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v.

Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), *overruling by statute on other grounds recognized by* Lane v. Astrue, No. 8:11-CV-345-T-27TGW, 2012 WL 292637, at \*4 (M.D. Fla. Jan. 12, 2012).

## IV.    Whether ALJ Carter Properly Discounted the Opinion of Plaintiff's Treating Physician

Plaintiff asserts the ALJ's failure to give proper credit to Dr. Galea's full opinion is reversible error. (Doc. 15, pp. 15–16.) Dr. Galea, Plaintiff's longtime treating rheumatologist, opined that Plaintiff was "capable of lifting and/or carrying 20 pounds occasionally and less than ten pounds frequently and standing and/or walking for at least two hours in an eight-hour workday." (Doc. 9-2, p. 31.) Further, he opined that Plaintiff would need frequent walking breaks and would need to periodically elevate her legs and her position between sitting and standing. Dr. Galea found Plaintiff capable of performing occasional postural activities, such as reaching, handling, fingering, and feeling, but that she was limited in her pushing and pulling abilities. He also determined Plaintiff should avoid concentrated exposure to extreme cold or heat, wetness, humidity, noise, and all exposure to gases and hazards such as machinery or heights. Finally, Dr. Galea opined that Plaintiff would, on average, miss more than three days of week per month. (Id.; see also doc. 9-21, pp. 20–23 (Dr. Galea's April 10, 2015 Medical Physical Medical Source Statement).) With the exception of Dr. Galea's final opinion that Plaintiff would average more than three days of missed work each month, which ALJ Carter rejected as "speculative and not supported by the total case record," the ALJ assigned this opinion great evidentiary weight. (Doc. 9-2, p. 31.) Indeed, the balance of Dr. Galea's opinion is incorporated into Plaintiff's RFC as determined by ALJ Carter. (Id. at p. 24.)

Plaintiff avers ALJ Carter lacked substantial evidence and good cause to discount Dr. Galea's final opinion that Plaintiff would be absent from work more than three times per month.

(Doc. 15, pp. 15–16.)  Plaintiff contends the ALJ failed to identify a contrary medical opinion to support his decision to discount Dr. Galea's and that the total case record supports the opinion at issue.  (Id.)  In this respect, Plaintiff points to Dr. Galea's long-term treating relationship and knowledge of her medical condition, her own testimony regarding her fatigue and difficulties, Dr. Robert Packer's testimony as a consultative examiner, and Plaintiff's June 2014 hospitalization.  (Id. at pp. 16–18.)  Finally, Plaintiff argues that ALJ Carter did not properly apply SSR 96-2p and did not follow the requirements of 20 C.F.R. § 416.920b prior to discounting Dr. Galea's opinion.  (Id. at pp. 19–21.)  If Dr. Galea's full opinion is properly credited, Plaintiff asserts that a finding of disability would necessarily issue in light of the vocational expert's testimony regarding Plaintiff's ability to find work despite her limitations.[2] (Id. at pp. 16, 18, 23.)

Defendant maintains that ALJ Carter reasonably concluded that Dr. Galea's opinion regarding Plaintiff's ability to maintain workplace attendance was speculative and not supported by the total evidence of record.  (Doc. 16, pp. 5.)  Defendant argues that, even though Dr. Galea is a treating physician, his discounted opinion speaks to Plaintiff's RFC, which is an issue reserved to the Commissioner.  (Id. at p. 6.)  Further, because Dr. Galea only checked a form box regarding Plaintiff's likely days missed, Defendant contends he failed to cite evidence or explain his opinion, rendering it "conclusory speculation" with an unclear basis.  (Id. at p. 7.)  Defendant asserts ALJ Carter had good cause and substantial evidence to discount Dr. Galea's opinion because Plaintiff did not frequently report being fatigued, testified she was able to take care of herself and occasionally hunt, and had unsubstantiated subjective complaints of pain and other

---

[2]  The vocational expert testified that, when accounting for Plaintiff's limitations as found in her RFC, she would be unable to find sustainable work in the national economy if she averaged more than one missed day per month.  (Doc. 9-2, pp. 66–67.)

disabling symptoms. (Id. at pp. 8–9.) Finally, Defendant contends the ALJ's decision to partially discount Dr. Galea's opinion was supported by the state agency medical consultants who both opined that Plaintiff would not be "significantly limited" in maintaining regular work attendance. (Id. at p. 9 (citing doc. 9-3, pp. 12, 30).)

In her Reply, Plaintiff asserts that Dr. Galea's records objectively reveal her limitations and problems with varying degrees of pain. (Doc. 17, p. 1.) She reiterates that Dr. Galea's opinion as to her missing more than three days of week per month was based on his many examinations of her and the resulting objective findings. Further, Plaintiff contends Defendant's "checked box" argument is without merit, as the rest of Dr. Galea's opinion, which the ALJ afforded great weight, was on the same form. (Id. at p. 2.) In sum, she contends that if Dr. Galea's opinion "is entitled to great weight as found by [ALJ Carter], the entire opinion should be entitled to great weight[;] the [ALJ] should not be allowed to pick and choose the portions of this opinion to give credence and great weight." (Id. at p. 3.)

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1178–79 (11th Cir. 2011) (alteration in original) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted).

"Good cause exists 'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" Winschel, 631 F.3d at 1179 (quoting Phillips, 357 F.3d at 1241). "The ALJ has wide latitude to determine what weight to assign to those opinions, so long as he operates within the regulatory and judicial frameworks." Zanders v. Colvin, No. CV412-182, 2013 WL 4077456, at *5 (S.D. Ga. Aug. 12, 2013). "For instance, when discounting a medical opinion, [the ALJ] should consider several factors, including the examining relationship, the treatment relationship, the doctor's specialization, whether the opinion is amply supported, and whether the opinion is consistent with the record." Id. (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). Thus, the ALJ is not obligated to agree with a medical opinion if the evidence of record tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (citations omitted). However, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179 (citation omitted). Failure to "clearly articulate the reasons for giving less weight to the opinion of a treating physician" is "reversible error." Lewis, 125 F.3d at 1440 (citation omitted).

The question the Court must determine is not whether Dr. Galea's opinion on Plaintiff's ability to maintain attendance was correct or supported by the record but whether, consistent with applicable law, ALJ Carter had good cause, supported by substantial evidence, to partly discount Dr. Galea's opinion. This particular opinion of Dr. Galea—that Plaintiff would on average miss more than three days of work per month—was generally rejected by the ALJ as "speculative and not supported by the total case record." (Doc. 9-2, p. 31.) ALJ Carter discounted this opinion without explaining why evidence showed it was speculative, without

10

citing to any contrary evidence of record, and without showing why it was not supported by the total case record. Given that the ALJ afforded great weight to the rest of Dr. Galea's opinion and used it as the foundation of Plaintiff's RFC, the paucity of explanation as to why this portion of his opinion was rejected is striking. The Court recognizes that an ALJ is not required to discuss every detail contained in a claimant's record, Dyer, 395 F.3d at 1211. Nevertheless, the ALJ should have discussed with more specificity and thoroughness the medical evidence of record inconsistent with the opinion at issue. Simply characterizing an opinion as "speculative and not supported by the total case record" without any supporting explanation or citation is conclusory and falls short of the requirement to "clearly articulate the reasons" for discounting a treating physician's opinion. Lewis, 125 F.3d at 1440 (citation omitted).

There may well be evidence of record that contradicts Dr. Galea's opinion or that shows it is wholly speculative. However, based on the lack of explanation provided by ALJ Carter's decision on this particular issue, the Court cannot discern whether there was "good cause" or substantial evidence to reject Dr. Galea's opinion on Plaintiff's ability to maintain regular workplace attendance. See Lupo v. Colvin, No. 8:14-CV-1791, 2015 WL 12844409, at \*4 (M.D. Fla. Sept. 23, 2015) (remanding for further consideration and noting that, where the ALJ chooses to give an opinion substantial weight, "she may not cherry-pick the report for favorable positions and discard the rest without some explanation for doing so"); Sommerfeldt v. Comm'r of Soc. Sec., No. CV213-146, 2014 WL 4187503, at \*3 (S.D. Ga. Aug. 22, 2014) ("If the [RFC] conflicts with an opinion from a medical source, the adjudicator must *explain* why the opinion was not adopted." (citing SSR 96-8p)); accord Myles v. Astrue, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ may not selectively consider medical reports, especially those of treating physicians . . . . It is not enough for the ALJ to address mere portions of a doctor's report."

11

(citations omitted)). Unlike ALJ Carter's decision here, in cases where courts have found substantial support to discount a treating doctor's opinion on workplace attendance, the ALJ provided particularized explanation and detailed reasons, including specific comparisons to the record, to discount the doctor's opinion. See, e.g., Johnson v. Berryhill, No. 3:16CV500/MCR/EMT, 2018 WL 1464055, at \*5, 7–8 (N.D. Fla. Feb. 28, 2018), *report and recommendation adopted*, 2018 WL 1463700 (N.D. Fla. Mar. 23, 2018)

Defendant's arguments in support of the ALJ's insufficiently explained decision are unavailing. Defendant contends that Dr. Galea's opinion was "unsupported" because it was expressed only in a "checked box." (Doc. 16, pp. 7–8.) Although true, the rest of Dr. Galea's opinion, which ALJ Carter assigned great evidentiary weight, was also contained on this same Social Security form and relied heavily on checked boxes. (See Doc. 9-21, pp. 21–23.) Moreover, the form directed Dr. Galea to issue opinions based on his "findings with respect to medical history, clinical and laboratory findings (or lack thereof), diagnosis, prescribed treatment and response, expected duration[,] and prognosis." (Id. at p. 21.) In light of Plaintiff's longer than two-year treating relationship with Dr. Galea and the many hospitalizations or medical visits she required during that time, (doc. 15, pp. 5–12; doc. 17, pp. 1–2), Dr. Galea clearly had support from Plaintiff's medical history to form his workplace attendance opinion.[3] Furthermore, when properly construed, the cases Defendant cites for the proposition that lack of support alone suffices for "good cause" to discount an opinion, (doc. 16, pp. 7–8), show that inconsistency or contradiction are the touchstones of good cause. See, e.g., Brown v. Comm'r of Soc. Sec., 442 F. App'x 507, 515 (11th Cir. 2011) (per curiam) (opinion rejected as conclusory and inconsistent

---

[3] Importantly, the ALJ discounted this opinion not because it was unsupported within the form but because it was "speculative and not supported by the total case record." (Doc. 9-2, p. 31.) The ALJ, however, failed to show how the record contradicted or failed to support this finding. To be clear, the Court points to this information only to show Defendant's assertion that Dr. Galea had no support for his opinion is incorrect as a matter of record, not to indicate that Dr. Galea's opinion is necessarily accurate.

with treatment notes and examinations); <u>Anderson v. Comm'r of Soc. Sec.</u>, 441 F. App'x 652, 653–54 (11th Cir. 2011) (per curiam) (opinion rejected as internally inconsistent and unsupported by objective evidence); <u>Barclay v. Comm'r of Soc. Sec.</u>, 274 F. App'x 738, 740 (11th Cir. 2008) (per curiam) (opinion rejected as unsupported and inconsistent with treatment notes); <u>Phillips</u>, 357 F.3d at 1240–41 (opinion rejected as inconsistent with doctor's prior observations and claimant's own testimony).

Here, ALJ Carter failed to show how Dr. Galea's workplace attendance opinion was internally inconsistent, inconsistent with his own records, or contrary to other medical evidence of record. Although it may be the case that Dr. Galea's opinion is contradicted by other evidence of record or unsupported by the total case record, the ALJ's decision as presently stated leaves the Court to guess as to what evidence is inconsistent with or undermines his opinion. At over 1,400 pages, (doc. 9), the record in this case is quite voluminous, and the Court cannot be tasked with scouring its many pages in search of evidence to support the ALJ's unexplained and uncited determination to partly discount Dr. Galea's opinion.

To be sure, Defendant points to three pieces of evidence from the record to support ALJ Carter's decision: 1) Plaintiff's lack of frequent fatigue reports; 2) Plaintiff's testimony that she could care for herself and hunted on occasion; and 3) the opinions of the state agency medical consultants that Plaintiff was "not significantly limited" in maintaining regular attendance. (Doc. 16, pp. 8–9 (record citations omitted).) However, lack of frequently reported fatigue or the ability to care for oneself and occasionally hunt are not dispositive of, or substantial evidence against, whether a person who suffers from lupus and fibromyalgia can maintain full-time regular workplace attendance each week of every month. <u>See</u> <u>Enright v. Astrue</u>, No. 8:02-cv-1225, 2008 WL 476670, at *5 (M.D. Fla. Feb. 19, 2008) (remanding an ALJ's rejection of a

treating doctor's opinion as speculative and lacking objective support for further consideration because there was "no indication that the [ALJ] took into consideration when evaluating [the doctor's] opinions that the hallmark of fibromyalgia is the lack of objective findings"). Moreover, the relevance of fatigue reports to Plaintiff's workplace attendance is of only minor probative value such that it fails to constitute substantial evidence to support the ALJ's decision. See Gaskin v. Comm'r Soc. Sec., 533 F. App'x 929, 931 (11th Cir. 2013) (per curiam) (Absent a statement explaining the reasons for discounting a medical opinion, courts "will decline to affirm simply because some rationale—given the record—might support the ALJ's conclusion." (citation omitted)). Finally, although a contrary opinion from a state agency medical consultant could provide the necessary "good cause" to partially discount Dr. Galea's opinion, and the state agency consultant's here found that Plaintiff was "not significantly limited" in maintaining regular attendance, (doc. 9-3, pp. 12–13, 30–31), ALJ Carter expressly narrowed the evidentiary weight of these 2014 opinions because new medical evidence and review of the entire record showed Plaintiff "is more limited than previously determined," (doc. 9-2, p. 31). Because the ALJ limited the force of these opinions and did not cite to them in support of his conclusion to discount Dr. Galea's opinion, the Court may not now reweigh this evidence or substitute the ALJ's judgment that these opinions were stale, at least in part, and were only due partial evidentiary weight. Dyer, 395 F.3d at 1210.

In sum, the Court finds the ALJ's decision to partially discount Dr. Galea's opinion, specifically that Plaintiff would on average miss three or more workdays a month, was not supported by "good cause" and substantial evidence. On the scant explanation provided by ALJ Carter on this issue, the Court is left guessing as to why Dr. Galea's opinion was afforded great evidentiary weight on all accounts except this one. Merely stating that an opinion is "speculative

14

and not supported by the total case record," without any explanation of or citation to that record, fails to articulate the requisite particularized reasoning needed to lawfully discount the medical opinion of a treating physician. Winschel, 631 F.3d at 1179 (citation omitted); Lewis, 125 F.3d at 1440 (citation omitted). Without this information, the Court cannot conclude that ALJ Carter's challenged decision was supported by substantial evidence. That said, because a more thorough review and explanation of the record in relation to Dr. Galea's opinion is warranted, the Court does not agree with Plaintiff that the remedy in this case is a remand for the award of benefits, (doc. 16, p. 23). See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993) (Disability should be awarded on remand when the evidence establishes "disability without any doubt." (citation omitted)). As noted above, proper explanation of the record may indeed show "good cause" and substantial evidence to partly discount Dr. Galea's opinion.

Accordingly, the Court should **REVERSE AND REMAND** the Commissioner's decision, pursuant to sentence four of Section 405(g) of the Act, for further consideration of Dr. Galea's opinion. If the Court accepts my recommendation, on remand the ALJ shall reconsider the weight given to Dr. Galea's opinion and explain what weight his opinion is accorded and the reasons therefor. In the event the ALJ decides to reject any portion of Dr. Galea's opinion, the ALJ must provide detailed, explicit reasons supported by substantial evidence. If, while evaluating the evidence, the ALJ finds that further development of the record is necessary, the ALJ shall take the appropriate steps to do so. Further, to the extent necessary, the ALJ shall reconsider Plaintiff's RFC and vocational record in light of any change in the weight accorded to Dr. Galea's opinion.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** that the Court **REVERSE AND REMAND** the decision of the Commissioner, pursuant to sentence four of Section 405(g), for further consideration consistent with this opinion. I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to enter the appropriate judgment of reversal and remand and to **CLOSE** this case.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 24th day of August, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA